FERGEN, Respondent, vs. LYONS and others, Appellants.

*December 10, 1915—January 11, 1916.*

*Landlord and tenant: Covenant for renewal: Specific enforcement:
Certainty: Construction: Tender of payment: Waiver: Failure
to pay rent, when defeats covenant to renew.*

1. A covenant to renew a lease, if the terms are definitely fixed, or
   means are provided whereby they may be made certain by con-
   struction, is enforceable.
2. In a lease of a farm for one year, a clause providing that the
   lessee "has the first privilege of renting the farm if not sold at
   the end of the year" is *held* susceptible of being made certain
   by the application of settled rules for construction.
3. Reading such clause in the light of all the terms of the lease and
   the circumstances characterizing its making, and applying the
   rule that a meaning should be ascribed thereto which will sus-
   tain it as a binding promise for a renewal if that can reasonably
   be done, it is *held* to have the effect of a general promise to re-
   new, at the lessee's option, in case of the farm not being sold be-
   fore the end of the first term, if the lessor concluded to lease it
   for the succeeding year.
4. Such a general promise, subject to the contingencies mentioned,
   would call for a new lease for a year on the same terms as the
   original lease, but without any covenant for further renewal.
5. Tender of the down payment required for a renewal lease was
   not necessary, before bringing an equitable action on the cove-
   nant to renew, where the lessors had voluntarily disabled them-
   selves from keeping the covenant before the renewal lease was
   demandable, thus in effect waiving the tender.
6. Failure of the lessee to pay the rent when due under the original
   lease does not work a defeasance of a covenant to renew which
   is not in any way made conditional or dependent upon such pay-
   ment.
   BARNES, SIEBECKER, and KERWIN, JJ., dissent.

APPEAL from an order of the circuit court for Dane county:
E. RAY STEVENS, Circuit Judge. *Affirmed.*

Action for specific performance. There was a general de-
murrer to the complaint which was overruled.

The plaintiff, with some other matters not material to be stated, pleaded the following for a cause of action:

Defendants *Nellie Lyons, George, J. S., Nettie, Frank, Edward,* and *Charles Grady,* April 1, 1914, rented their farm to the plaintiff for the term of one year. The lease was in writing, the body thereof being as follows:

"The said party of the first part doth lease, demise and let unto the said party of the second part the following described premises:

"A certain farm lying in the towns of Fitchburg and Madison, consisting of about 278 acres of land, and familiarly known as the Grady farm, in the towns of Fitchburg and Madison, county of Dane, and state of Wisconsin. The farm is rented for one year from date, for six hundred ($600) dollars, one hundred ($100) dollars cash, three hundred ($300) dollars about November 1st, and the other two hundred ($200) dollars before the time is up.

"All grass seed to be sowed to be furnished by the said first party. Fence repairing to be done by the party of the second part, and material furnished by the party of the first part.

"The party of the second part has the first privilege of renting the farm if not sold at the end of the year."

Immediately after the lease was executed, plaintiff took possession of the leased premises and has since occupied the same. He has carried on the farm and expended money in respect thereto with a view of a second term, particularly by seeding sixty-five acres to grass. Relying on the privilege of a renewal, he has not put his own farm into proper condition for occupancy for the season of 1915. Failure of the lessors to keep their covenant for a renewal term will work irreparable injury to plaintiff. By reason of the farm not having been occupied for some time prior to plaintiff's term, the sum of $600 was a higher rental than would ordinarily be demanded for a single-year lease, which was the reason why the plaintiff was given the right to renew the lease, providing the farm was not sold.

Some time in February, 1915, or at some later date, the

lessors, by their duly authorized agent, leased the farm, on terms unknown to the plaintiff, to *John* and *Sadolf Swenson,* and on the 6th day of March thereafter, plaintiff received notice to vacate the premises. When the *Swensons* took their lease, they had notice of plaintiff's rights. He had paid and tendered to the agent of the lessors all the rent agreed upon according to the terms of the lease, except $400 which he tendered to the lessor's agent on condition of his receiving a renewal lease. On the 1st day of April, 1915, he duly demanded such renewal lease for one year from that date, and the same was refused. Plaintiff is now ready and at all times has been ready to pay the $400, provided he secures a renewal of the lease according to its terms.

For the appellants there was a brief by *Aylward & Olbrich,* and oral argument by *M. B. Olbrich.*

For the respondent there was a brief by *Hill & Spohn,* and oral argument by *W. H. Spohn.*

MARSHALL, J. A covenant to renew a lease, if the terms are definitely fixed, or means are provided whereby they may be made certain by construction, is enforceable. This court considered that subject at length in *Kollock v. Scribner,* 98 Wis. 104, 73 N. W. 776, where the following rules were deduced from the authorities: A covenant to renew a lease calls for a new lease,—not an extension of an old one. An unqualified covenant to renew a lease calls for a new lease for the same period and upon the same terms as the original lease, except the agreement to renew. "When the agreement for a renewal contains language other than that appropriate to a general promise, so that, by resort to the settled rules for construction, the language of the covenant to renew and conditions of the renewal cannot be made certain, then such covenant fails for want of certainty."

The promise to renew in this case is in language, not strictly appropriate to a general agreement to renew. It is

ambiguous.    Therefore the question arises whether it can be made certain by settled rules for construction.

One of the best known rules for construction is that it must be presumed parties, in making a contract, intended to use language effectively in all parts of it.    Therefore, the instrument should be so construed as, if possible, to carry out such purpose.    *Jacobs v. Spalding,* 71 Wis. 177, 36 N. W. 608; *Hicks P. Co. v. Wis. Cent. R. Co.* 138 Wis. 584, 120 N. W. 512; *Burgess v. Dane Co.* 148 Wis. 427, 134 N. W. 841. So if the agreement to give the respondent the first privilege of renting the farm, if not sold at the end of the year, can reasonably be read as an agreement upon the contingency mentioned to give a renewal for another year on the same terms as those of the original lease, that must be preferred to any meaning which would involve fatal uncertainty.

Another well known rule for construction is that a clause of a contract which is ambiguous by itself, must be read in connection with the rest of the instrument so as to clear up the uncertainty, if possible.    *Chicago, M. & St. P. R. Co. v. H. W. Wright L. Co.* 123 Wis. 46, 100 N. W. 1034; *Jacobs v. Spalding, supra.*    Applying that, our attention is attracted to those portions of the lease which indicate that it was contemplated respondent should incur expense which could not be beneficial to him without his carrying on the farm for a second term, and the broad discretion given him in respect to farming the land with reference to a future season.    He agreed to do all the work of repairing the fences and was allowed free hand as to seeding the land to grass.

Another rule for construction is that a contract may be read in the light of the circumstances characterizing its making for the purpose of clearing up ambiguities.    Within that rule, the allegation of the complaint falls that the rent stipulated in the lease was disproportionate to the advantages of a one-year lease.

The way the parties understood the lease in performance

of its terms is another consideration.  Respondent prepared
sixty-five acres of the plow land for the next year's work by
seeding the same to grass and appellants co-operated with
him in the matter.  It was argued that this was a trifling
matter, but we do not so regard it.  In seeding down the
land to grass, respondent may well have been to considerable
expense in properly preparing it so as to secure a good catch
and put the surface in proper condition for a good hay crop
and for advantageously harvesting the same.

Another and very important rule in such cases as this is
that, in case of any ambiguity in the provision of a lease in
respect to a renewal, the construction should be adopted which
will favor the tenant rather than one which will favor the
landlord.   24 Cyc. 990, 991.

There is very little use of citing precedents as controlling
in a case of this sort.   The principles must govern.   Lan-
guage which would be involved in fatal ambiguity under
some circumstances would not under others.   A good illus-
tration of that is *Holloway v. Schmidt,* 67 N. Y. Supp. 169,
where a lease for five years contained an agreement that the
lessee should have "the first privilege of a renewal" and it
was held, in view of the circumstances characterizing the
making of the instrument, that "first privilege of a renewal"
should be construed to mean that a renewal lease for five
years on the same terms as those of the original lease would
be made to the lessee, provided the lessor made a lease.

Reading the renewal clause in question in the light of all
the terms of the lease, and the circumstances pleaded and
which may be proved, characterizing the making of the in-
strument, and applying thereto the rule that a meaning
should be ascribed thereto which will sustain it, if that can
reasonably be done, it is considered that such clause is sus-
ceptible of being made certain by application thereto of set-
tled rules for construction.   Assuming, as we must, that the
parties intended to make a binding promise for a renewal of

the lease, and, looking to all the circumstances which have been mentioned, it seems that the renewal clause will reasonably admit of a construction to the effect of a general promise to renew, at the lessee's option, in case of the farm not being sold before the end of the first term, and the lessor's concluding to lease the place for the succeeding year. Such a general promise, subject to the contingencies mentioned, would call for a new lease for a year on the same terms as the original lease; but without any covenant to again renew. That was the view of the trial court and sustains the decision that the complaint states a good cause of action for specific performance so far as the character of the renewal covenant is concerned.

It is thought that the covenant to renew here, in view of all the circumstances appearing by the complaint, expressly or inferably, is distinguishable from the cases cited on behalf of appellants where fatal uncertainty was found, but if that be not so, it must be remembered that some courts treat ambiguous renewal clauses in leases with much less favor than others and are more inclined to follow precedent than principle. Our purpose is to test the renewal clause by the principles stated in *Kollock v. Scribner,* 98 Wis. 104, 73 N. W. 776, and not to vary therefrom in order to square the decision with the multitude of existing adjudications dealing with such covenants, or to write extensively to point out wherein the instant case differs from those relied upon by counsel for appellants. It is plain to be seen, however, that "with the privilege of longer" as in *Howard v. Tomicich,* 81 Miss. 703, 33 South. 493; "preference of renting said property so long thereafter as it shall be rented for a store" as in *Delashmutt v. Thomas,* 45 Md. 140; "privilege of five years longer, he paying additional rent on revaluation," no provision being made as to time or manner of revaluation, as in *Streit v. Fay,* 230 Ill. 319, 82 N. E. 648,—are quite different from "first privilege of renting the farm if not sold at the end of the year," as in this case. In neither of the former

could it be found by construction that the covenant to renew contained a general promise on a contingency or otherwise for a new lease on the same terms as the old one. The same is true of all the other cases cited to our attention, though it is shown that in some jurisdictions language of a renewal covenant has been held fatally uncertain which has been otherwise held elsewhere. 2 Tiffany, Landl. & T. 1521.

It is contended on behalf of respondent that there was no sufficient tender of the down payment required for a renewal lease. That is answered by the pleaded fact that appellants had disabled themselves from keeping their covenant long before the renewal lease was demandable. A tender is not necessary, especially in support of an equitable action, where the facts show that it would not be accepted or has been practicably waived by voluntary disability to do the thing which the tender would require to be done. That is equivalent to a refusal in advance, of a tender and waives it. *Potter v. Taggart,* 54 Wis. 395, 11 N. W. 678. "A tender is waived where the tenderee makes any declaration which amounts to a repudiation of the contract, or takes any position which would render a tender, so long as the position taken by him is maintained, a vain and idle ceremony." 38 Cyc. 134, C. A clearer case of uselessness to make a tender could hardly be stated than the one appearing by the complaint.

The further contention is made that the failure to pay the rent under the original lease, when due, worked a defeasance of the renewal covenant. That does not seem so. The covenant to renew was not made conditional upon anything except the decision of respondent to take a new term, and the farm not being sold at the end of the first year. Appellants had until the close of the last day of such term to defeat the renewal covenant. Therefore respondent's offer to take the new term was in ample time in any view of the case.

Whether the respondent had a right to retain rent due on the original contract to secure himself for damages for breach of the covenant to renew does not seem to be material. Ap-

pellants had their remedy to recover the rent and respondent his for a breach of the covenant for a new lease. The two matters seem to be independent of each other. In such a case, failure of the lessee to keep some covenant in the original lease is not a defense to an action to compel the lessor to perform his covenant to renew. 1 McAdam, Landl. & T. (4th ed.) 572.

The foregoing covers all contentions made on behalf of appellants which impress us as requiring discussion. We reach the conclusion that the demurrer to the complaint was properly overruled.

*By the Court.*—The order is affirmed.

SIEBECKER and KERWIN, JJ., dissent.

BARNES, J. (*dissenting*). I think there is no ambiguity in the clause of the lease giving the lessee "the first privilege of renting the farm if not sold at the end of the year." As I view it, it gave the lessee the privilege of renting, provided he was willing to enter into as favorable a lease as any one else. This is the plain and obvious meaning of the language used. The court construes the language as an agreement to renew the existing lease if no sale was made. If this was what was intended, it would have been an easy matter to have said so. Arbitrary rules of construction are more honored by being breached than by being observed, where they serve to defeat the intention of parties to a written contract.