MULVANEY, Appellant, vs. TOWN OF ARMSTRONG, Respondent.

*January 7—February 4, 1919.*

*Towns: Duties of clerk: Power of town board to employ another person to make out tax roll: Reassessment.*

1. A town is a mere *quasi*-corporation, possessing only such powers and functions and subject only to such liabilities as are provided by statute. It must function in the manner prescribed by the legislature, and courts can sanction no other.
2. It is the duty of the town clerk to make out the tax roll of the town; and prior to the enactment of sec. 1084*a*, Stats. (ch. 274, Laws 1917), a town board had no authority to employ another person to perform that duty, even though, by reason of orders of the tax commission requiring reassessments of the property of the town for previous years, the work of making out the roll became so complicated and difficult that neither the clerk nor any other qualified elector of the town was capable of doing it in the manner required by sec. 1087—57, Stats.

APPEAL from an order of the circuit court for Oconto county: W. B. QUINLAN, Circuit Judge. *Affirmed.*

This action was brought to recover $2,171.69 from the town of *Armstrong* for making out the tax roll of said town for the year 1915, containing debits and credits, made necessary by two reassessments of the property of said town under the provisions of secs. 1087—45 to 1087—56, Stats.; the claim being based upon an alleged employment to do such work by the town board of said town. A demurrer to the complaint was sustained, and this appeal was taken from the order sustaining the demurrer. Essential portions of the complaint are referred to in the opinion.

For the appellant there was a brief by *Eberlein & Larson* of Shawano, and oral argument by *Albert S. Larson.*

For the respondent there was a brief by *Greene, Fairchild, North, Parker & McGillan* of Green Bay, attorneys, and *George G. Greene* and *Jerome R. North,* of counsel, and oral argument by *Mr. North.*

OWEN, J. By secs. 1087—45 to 1087—56, Stats., the state tax commission is authorized to make a reassessment of the property in any assessment district whenever it shall satisfactorily appear that the assessment of property in such assessment district is not in compliance with law and the interest of the public will be promoted by a reassessment of such property. By sec. 1087—51 it is provided that the

"reassessment roll when completed shall be filed in the office of the clerk of such district and shall take the place of the original assessment made in such district for said year for all purposes and shall be *prima facie* evidence of the facts therein stated and of the regularity of all the proceedings culminating therein."

If, however, such reassessment shall not have been completed in time to take the place of the original assessment so as to form the basis for the computation of taxes for that year, then by sec. 1087—57 it is provided that

"the clerk of the district shall levy and apportion the taxes for that year upon the basis of the original assessment roll, and when the reassessment is completed the inequalities in the taxes levied under the original assessment shall be remedied and compensated in the levy and apportionment of taxes in such district next following the completion of said reassessment in the following manner: Each tract of real estate, and, as to personal property, each taxpayer, whose tax shall be determined by such reassessment to have been relatively too high, shall be credited a sum equal to the amount of taxes charged on the original assessment in excess of the amount which would have been charged had such reassessment been made in time; and each tract of real estate, and, as to personal property, each taxpayer, whose tax shall be determined by such reassessment to have been relatively too low, shall be charged, in addition to all other taxes, a sum equal to the difference between the amount of taxes charged upon such unequal original assessment and the amount which would have been charged had such reassessment been made in time."

It appears from plaintiff's complaint that on the 25th day of May, 1914, the state tax commission made an order re-

quiring a reassessment of all the taxable property of the town of *Armstrong* for the year 1913; that on the 5th day of January, 1915, and before the order of May 25, 1914, had been complied with, the state tax commission made a further order requiring a reassessment of all the taxable property in said town for the year 1914. Thus proceedings for the reassessment of the town for the years 1913 and 1914 were concurrently pending. By September, 1915, such reassessment proceedings had either been completed or were so near completion that the matter of making out the tax roll for 1915, which should contain debits and credits as required by sec. 1087—57 to equalize taxes paid based on the unlawful assessments for the years 1913 and 1914, gave concern to the town clerk. The complaint states:

"That the town clerk and town officers of said town were inexperienced in said work and were incompetent and unable to perform the same; that affiant is informed and verily believes that it was impossible to procure the services of any qualified elector of said town as town clerk competent to perform said work and able to complete the same within the time required by law; that the town clerk of the defendant town informed the defendant's town board of his inability and want of capacity to perform said work, and having failed and neglected to cause said work to be performed it became and was absolutely necessary for said town and its officers to employ some one experienced in said work to perform the same, in order to carry out the orders of said tax commission and to prevent the town from being involved in prolonged and expensive litigation. That on or about the 15th day of August, 1915, the said defendant, the town of *Armstrong,* acting through its duly elected and constituted town board and upon the advice of V. J. O'Kelliher, its duly employed attorney in said matter, and at a duly held meeting of said board, employed said plaintiff to perform said services. Pursuant thereto the plaintiff did, with the aid of two assistants, perform said services, and was employed in the performance thereof from the 1st day of September, 1915, to the 23d day of March, 1916, and in

the performance of said services was obliged to and did expend the sum of $21.69."

The services rendered by plaintiff pursuant to such alleged employment form the basis of this action. The case is ruled by *Frederick v. Douglas Co.* 96 Wis. 411, 71 N. W. 798. In that case it was held that where a county had a duly qualified and acting district attorney the board of supervisors had no authority to employ another attorney to take charge of and conduct in the circuit court for that county tax litigation in which the county was interested, as it was the legal duty of the district attorney to defend all such actions or proceedings. It was there said:

"Counties are, at most, but local organizations, which, for the purposes of civil administration, are invested with a few functions characteristic of a corporate existence. They are local subdivisions of the state, created by the sovereign power of the state, of its own sovereign will, without the particular solicitation, consent, or concurrent action of the people who inhabit them. . . . They are purely auxiliaries of the state; and to the general statutes of the state they owe their creation, and the statutes confer upon them all the powers they possess, prescribe all the duties they owe, and impose all liabilities to which they are subject. Considered with respect to the limited number of their corporate powers, the bodies above named rank low down in the scale or grade of corporate existence, and hence have been frequently termed '*quasi*-corporations.' "

The same is true of towns. They are *quasi*-corporations. *Norton v. Peck,* 3 Wis. 714; *Eaton v. Manitowoc Co.* 44 Wis. 489; *Miller v. Jacobs,* 70 Wis. 122, 35 N. W. 324. "A town as well as a county possesses only such powers and functions and is subject only to such liabilities as are provided by statute." 38 Cyc. 599.

It was the duty of the town clerk to make out the tax roll for the year 1915. He took his office *cum onere*. Even though the ordinary duties of the office became more ardu-

ous and exacting, it was nevertheless his duty to perform them. Whether the town had power to grant him additional compensation for extraordinary duties is not before us, for the reason that no attempt to that end was made. The plaintiff here is an entire stranger to the town, not even being a resident thereof. He bases his right to recover upon the alleged contract entered into with the town board. If the town is bound by that contract, statutory authority to enable the town board to bind the town must have existed. Concededly there was no such express authority. The passage of ch. 274, Laws 1917, creating sec. 1084a, Stats., authorizing the town board to employ additional clerical help in preparing the tax rolls under such circumstances, amounts to a legislative assertion of that fact. Appellant's attorneys contend that authority is implied from the statutes providing for the reassessment. Such is not the case. They contain no suggestion that the making of the tax roll is to be taken from the hands of the town clerk in cases of reassessment made thereunder, nor that the town board is charged with any duty or clothed with any authority to meddle or interfere with its preparation.

The effect of the closing sentence of sec. 1087—57, providing that "the tax commission, any of its members, or its authorized agent, shall at any time have access to all assessment and tax rolls herein referred to for the purpose of assisting the local clerk and in order that the results of the reassessment may be carried into effect," need not be considered, as, obviously, it has no bearing upon appellant's right to recover in this action.

Appellant places considerable stress upon the fact alleged in the complaint that there was no one in the town competent to make the tax roll under the circumstances. That amounts to an assertion that the people of that town are not capable of local self-government. This raises a nonjudicial issue—one that courts cannot entertain. They are powerless to grant relief even though the allegation be found true. They cannot dissolve the town, change the scheme of

government thereof, nor enlarge or limit its powers. It must function in the manner prescribed by the legislature, and courts can sanction no other.

*By the Court.*—Order affirmed.